**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | No. 24-3546 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | D.C. No. 1:22-cr-00213-JAM-BAM-1 |
| | ) | |
| **CHARLES BARRETT,** | ) | Eastern District of California, |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**APPELLANT'S OPENING BRIEF**

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

Honorable John A. Mendez
United States District Judge

DONALD B. MARKS, SBN 43538
MARKS & BROOKLIER, APC
2121 Avenue of the Stars, #800
Los Angeles, CA 90067
Tel.: (310) 407-5433
E-mail: MarksBrooklier@yahoo.com

Attorney for Defendant-Appellant
CHARLES BARRETT

# TABLE OF CONTENT

**Page(s)**

I. STATEMENT OF JURISDICTION………………………………….. 6

II. CUSTODIAL STATUS……………………………………………… 7

III.ISSUES PRESENTED FOR REVIEW…………………………….…. 7

IV. STATEMENT OF THE CASE………………………………….. 8

V. ARGUMENT…………………………………………………… 14

A. THE TRIAL COURT ERRED IN NOT EXCLUDING EVIDENCE OF PRIOR UNCHARGED ALLEGATIONS OF SEXUAL ASSAULT FROM THREE DIFFERENT WITNESSES, PURSUANT TO FEDERAL RULE FO EVIDENCE 413…………………………………………….. 14

B. THE DISTRICT COURT ERRED IN ALLOWING UNCHARGED CONDUCT OF ALLEGED THREATS AND WITNESS INTIMIDATION UNDER FEDERAL RULES OF EVIDENCE 404(b)…………………. 18

C. THE DISTRICT COURT ERRED WHEN IT DIS-REGARDED DEFENSE COUNSEL'S OBJECTION TO THE PRESENTENCE INVESTIGATION'S CALCULATION OF APPELLANT'S CRIMINAL HISTORY AT CATEGORY IV ………………………………. 19

D. THE DISTRICT COURT ERRED IN APPLYING THE TWO-LEVEL OBSTRUCTION OF JUSTICE ADJUSTMENT….……………………………………… 22

## TABLE OF CONTENT
## Continued

**Page(s)**

E. COUNT 2 SHOULD HAVE BEEN DISMISSED BY THE TRIAL COURT…………………………. 25

VI. STANDARD OF REVIEW………………………………… 26

VII. CONCLUSION…………………………………………….. 28

CERTIFICATE OF COMPLIANCE…………………………... 29

CERTIFICATE OF SERVICE………………………………… 30

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Fischer v. United States*,
*144* S.Ct. 2176 (2024) .......................... 17, 18

*Huddleston v. United States*,
485 U.S. 681 (1988) ................................. 9

*Regina Coll. v. Russell*,
499 U.S. 225 (1991) ................................ 21

*United States v. Le May*,
260 F.3d 1018 (9th Cir. 2001) ...................... 10

*United States v. Norris*,
428 F.3d 907 (9th Cir. 2005) ........................ 9

*United States v. Redlighting*,
624 F.3d 1090 119-20 (9th Cir. 2010) ................ 9

**Statutes**

18 U.S.C. §1512 ....................................... 17

18 U.S.C. § 2241(a)(1) ............................ 1, 3

18 U.S.C. §2241(b) .................................... 3

18 U.S.C. § 3231 ...................................... 1

18 U.S.C. § 3742 ...................................... 2

28 U.S.C. § 1291 ...................................... 2

18 USC § 2244(B) .................................. 1, 19

U.S.S.G. Ch. 5, Part A ............................... 14

U.S.S.G. § 3C1.1, cmt. 2 .......................... 19

U.S.S.G. §3C1.1, cmt. 4(C) ......................... 16

U.S.S.G. §4A1.2(e) ................................ 15

USSG §3C1.1 ..................................... 13, 14

**Other Authorities**

Fed. Rule of Evidence 404(b) ................. 11, 12, 13

Fed. Rule of Evidence 413 ........................... 9

Federal Rule of Evidence 403 ............. 10, 11, 12, 13

Federal Rules of Criminal Procedure Rule 29 .. 19, 20, 21

Reporter's Transcript. "Sealed-ER" .................. 1

United States v. Ho ................................. 12

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) No. 24-3546 |
| | ) |
| Plaintiff-Appellee, | ) D.C. No. 1:22-cr-00213-JAM-BAM-1 |
| v. | ) Eastern District of California, |
| **CHARLES BARRETT,** | ) |
| Defendant-Appellant. | ) |

**I.**

**STATEMENT OF JURISDICTION**

Appellant, CHARLES BARRETT, by and through his counsel of record, Donald B. Marks, appeals his conviction for aggravated sexual abuse in violation of § 2241(a)(1) and abusive sexual contact in violation of 18 USC § 2244(b). The district court asserted jurisdiction pursuant to 18 U.S.C. § 3231 and entered the judgment on June 4, 2024. CR [1] The notice of appeal was timely filed on June 23, 2024. CR. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

///

## II.

## CUSTODIAL STATUS

Mr. Barrett is presently serving a sentence imposed by the district court.

## III.

## ISSUES PRESENTED FOR REVIEW

A. Did the district court err by allowing the government to admit evidence of prior uncharged allegations of sexual assault from three (3) different witnesses pursuant to Fed. Rule of Evidence 413?

B. Did the district court err in allowing uncharged conduct of alleged threats under Fed. Rule of Evidence 404(b)?

C. Did the district court err when it disregarded defense counsel's objection to the Presentence Investigation's Calculation of Appellant's Criminal History at Category IV?

D. Did the district court err in applying the Two-Level Obstruction of Justice Adjustment?

E. Count 2 should have been dismissed by the trial court.

///

///

///

///

[1] Hereinafter, "CR" will refer to the Clerk's Record; "ER" refers to the Excerpts of Record; and "RT" refers to the Reporter's Transcript. "Sealed-ER" refers to the Sealed Excerpts of Record filed and hereby incorporated by reference.

## IV.

## STATEMENT OF THE CASE

On August 4, 2022, Mr. Barrett was charged and the government filed an indictment against the appellant alleging two counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1) and one count of abusive sexual contact in violation of 18 U.S.C. §2241(b).

The trial began on February 5, 2024 and was completed on February 13, 2024. On February 13, 2024 the jury returned verdicts of guilty against the appellant with respect to the three (3) charged counts.

On June 4, 2024 the district court sentenced the appellant to life imprisonment on each of counts 1 & 3 and a term of 24 months on count 2, all to be served concurrently for a total term of imprisonment for life. The appellant filed a timely notice of appeal on June 6, 2024.

The victim, K.G., testified that she met the appellant on line after which they started communicating through a series of texts beginning in August/September, 2015. In or about August 13, 2016, K.G. was at Yosemite National Park for a weekend of hiking. She messaged the appellant to request hiking recommendations. The appellant, who was in the area, met with K.G. with a group of friends after she had completed her hike. That evening, at the gathering, the

appellant invited her to watch a meteor shower with him and his friends later that evening. She agreed.

K.G. testified that she met up with the appellant but not his friends also. At a spot in the woods according to K.G. the appellant forcibly penetrated her, both vaginally and anally, without her consent.

After the first sexual assault, according to K.G.'s testimony, she and the appellant went back to an employee cabin. They stayed together, in the same bed, but according to K.G., she could not move and was terrified of him.

The next day, the appellant went to work and K.G. went on a hike. Later, she and the appellant hiked and swam in a river. At that location, K.G. testified, the appellant forcibly digitally penetrated K.G. without her consent. This was the second assault.

Later, the third assault occurred at the showers located in the housing unit where they were staying. This assault happened when the appellant penetrated her vaginally (she believes) and anally without her consent. (2-ER-154-186; R.T. Feb. 7, 2024 at pp. 5- 39).

On cross-examination, K.G. testified that she was drinking wine along with the appellant when they went to see the meteor shower. She stated that she "was awake that she wasn't completely sober." (2-ER-187; R.T. Feb. 7, 2024 p. 67). The

appellant, who was also drinking wine, "stumbled" as he walked, and "speaking kind of gibberish under his breath." (2-ER-188; R.T. Feb. 7, 2024 at p. 70).

The next day, after the appellant went to work, K.G. went on a hike spoke to other hikers on the trail. K.G. did not tell any of the hikers about the assault and did not ask for help. (2-ER-189; R.T. Feb. 7, 2024, p. 85). She called him after he finished work and they went on a hike ending up at the river and then the showers at the employee housing. (The second and third assaults).

By the time they ended up at the showers, the appellant appeared intoxicated…he was "passing out" "mumbling" and "slurring words." (2-ER-189; R.T. Feb. 7, 2024 at p. 85). The next day before leaving to go home, she had breakfast at a restaurant with the appellant. After the weekend with the appellant, K.G. texted friends within several days describing her stay at Yosemite as "beautiful" and peaceful." (2-ER-190; R.T. Feb. 7, 2024 at p. 89).

Later, after several months, she texted another friend telling him that, referring to the appellant, "he's probably pretty angry at me right now just based on how I left things." (2-ER-191; R.T. Feb. 7, 2024 at p. 91).

K.G., before she made an official police report, contacted S.F. (whom she had met through a survey). S.F., who was an uncharged victim who testified in the

case, was contacted by K.G. so that she could prepare the report (2-ER-192; R.T. Feb. 7, 2024 at p. 92).

When K.G. spoke to law enforcement, she stated that in one of the text exchanges, the appellant, stated "I didn't rape you. You wanted it and you liked it." (2-ER-157, lns. 21-22; R.T. Feb. 7, 2024 p. 10, lines 21-22).

At trial, moreover, K.G. testified regarding text messages, social media posts to herself and other people regarding threats being made by the appellant.

Three different witnesses also testified for the government regarding prior uncharged allegations of assault by the appellant.

S.F. testified that in 2010 she visited her friend in Bishop, California for a climbing trip. After climbing and eating dinner, she returned to her friend's home and met the appellant, who was staying in a spare bedroom. They talked briefly and S.F. wanted to sleep in the den. Later, she woke up and appellant was touching her breasts and genitals. The appellant grabbed her and pushed his erect penis against her body. At some point, the appellant stopped and left the room. At a later time, S.F. received threats from the appellant and she had told friends about being assaulted by the appellant. Legitimately, she reported the incident to law enforcement. (2-ER-120-151; R.T. Feb. 8, 2024 at pp.55-86).

The appellant, years later, discovered during a July 2021 interview with law enforcement that S.F. and K.G. had become acquainted. The appellant's response was that they were conspiring to destroy him. Thereafter, the appellant was admitted to an emergency room in Mammoth, California and threatened to kill S.F. (See stipulation for witness. Brittaney Vargas, 2-ER-152; R.T. Feb. 8, 2024, p. 98).

E.B., another government witness, was called to testify as to a prior uncharged allegation of sexual assault. E.B., met the appellant at a climbing gym in 2016 and thereafter began a romantic relationship with the appellant involving consensual sex. The appellant, according to E.B., became emotionally unstable during the relationship and E.B. ended the relationship. At some point, the appellant threatened suicide an also made threats against E.B. The appellant, at one of times he showed up at E.B.'s housing forced her to have sex. (2-ER-80-112; R.T. Feb. 8, 2024, pp. 4-36(. He was drunk and had passed out before the assault. (2-ER-100-102; R.T. Feb. 8, 2024 pp. 24-26).

J.V., the third government witness who testified regarding an uncharged prior sexual assault, stated that she met the appellant on a Tinder dating app. After meeting at a climbing gym, the two of them returned to the group home where J.V. was staying. The appellant was too intoxicated to drive and J.V. agreed to let the appellant stay over as long as there was no sex. They began kissing each other but

the appellant thereafter forced sex with her by vaginally penetrating her with his penis. Thereafter, they stayed for about 3 months together at her home and they had consensual sex. J.V. testified that she felt sympathetic toward the appellant and therefore allowed him to stay at her home. (3-ER-218-222; R.T. Feb. 6, 2024 pp. 53-57)

On cross-examination, J.V. stated that appellant, during the time they were together, was in a panic occasionally and was suicidal. (3-ER-222-237; R.T. Feb. 6, 2024 pp. 57-72).

Asher Wolf, a government witness, has been a friend of R.G. for many years. In August, 2016, he received a call from R.G. while she was driving home from Yosemite. She sounded distraught on the call and told him that she had been raped. (2-ER-193-197; R.T. Feb. 7, 2024 pp. 111-115)

Jennifer Markowitz, a forensic nursing consultant, was called by the government as an expert. She had reviewed the evidence in the case as well as being present during the trial testimony of K.G. She concluded that K.G's description of her injuries was consistent with K.G.'s reported history of sexual assault and rape. Dr. Markowitz also was of the opinion that K.G. had symptoms of strangulation. (2-ER-197-215; R.T. Feb. 7, 2024 at pp. 115-133).

Mindy Mechanic, a government witness, is a clinical and forensic psychologist and testified that there are accepted explanations for a victim of sexual assault to stay in the physical presence of the person who assaulted the victim. Also, established reasons exist for lack of disclosure of the assault. (3-ER-239-271; R.T. Feb. 5, 2024 pp. 9-41).

## V.

## ARGUMENT

### A. THE TRIAL COURT ERRED IN NOT EXCLUDING EVIDENCE OF PRIOR UNCHARGED ALLEGATIONS OF SEXUAL ASSAULT FROM THREE DIFFERENT WITNESSES, PURSUANT TO FEDERAL RULE OF EVIDENCE 413.

Federal Rules of Evidence 413 permits the government to admit evidence of a sexual assault in order to prove the defendant's propensity to commit another sexual assault. Courts need not make a finding that the government has proven the existence of an uncharged sexual assault to allow evidence of it at trial. See *United States v. Redlighting*, 624 F.3d 1090 119-20 (9th Cir. 2010). The trial court must find, after reviewing the evidence of the prior acts, that a jury could reasonably find that the uncharged sexual assault occurred. See *United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005); *Huddleston v. United States*, 485 U.S. 681, 690

(1988). This requires the trial court to examine all the evidence and determine if a jury could reasonably find, using the preponderance of evidence standard, that the uncharged sexual assault occurred.

However, this Circuit has been clear that because this type of evidence is so prejudicial, the trial court must consider whether Federal Rule of Evidence 403 requires the exclusion of prior acts evidence. *United States v. Le May,* 260 F.3d 1018, 1022 (9th Cir. 2001). According to Rule 403, evidence is not to be admitted if its probative value is substantially outweighed by a danger of unfair prejudice. Federal Rule of Evidence 403. In *Le May*, this circuit stated that Rule 413 is not a "blank check" which allows the government to introduce any evidence it decides is relevant. Rule 403 allows a court to exclude relevant evidence if its probative value is a substantially outweighed by a danger of one or more of the following, in addition to unfair prejudice: confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Federal Rules of Evidence 403. A district court has wide discretion under Rule 403 to admit or exclude evidence. *United States v. Hans,* 738 F.2d 88, 91 (3rd Cir. 1984). The rule, by its terms, favors admissibility, since relevant evidence may be excluded only if its probative value is substantially outweighed by countervailing factors. *United States v. Hankey,* 203 F.3d 1160, 1172, (9th Cir. 2000).

If a party seeks to exclude an otherwise relevant piece of evidence by claiming that it is prejudicial, the evidence must be unfairly prejudicial. *Hankey*, at 1172.

Here, in the case at bar, the admission of the uncharged allegations of sexual assault by three witnesses was unfairly prejudicial as well as confusing and misleading to the jury. Federal Rule of Evidence 403(b).

The trial court, in weighing prior sexual misconduct evidence for admissibility, according to this Circuit, must consider the following factors: (1) the similarity of the other acts to the acts charged; (2) the closeness in time of the prior acts to the acts charged; (3) the frequency of the prior acts; (4) whether there are intervening circumstances; and (5) the necessity of the prior acts testimony. See *Le May*, 260 F.3d at 1027-28.

In the case at bar, the trial court found the prior act allegations of the three witnesses to be similar to the acts charged. However, both E.B. and J.V. had consensual sex with the appellant. Regarding J.V. she testified that, after the assault, she felt bad for the appellant and allowed him to lie with her for several months, during which time she had consensual sex with the appellant.

As to E.B., she and the appellant met at a climbing gym after which they began a romantic relationship involving consensual sex. (2-ER-91; R.T. Feb. 8, 2024 p.15). After they broke up, she alleged he assaulted her.

The allegations relating to S.F. involve an attempt to have sex by the appellant in a forceful manner. The appellant, according to S.F., stopped at some point and left the room they were in before any rape occurred. (2-ER-113-145; R.T. Feb. 8, 2024 pp. 48-80)

In sum, the testimony of S.F., J.V., and E.B., involved alleged sexual assaults which are not similar to the charged conduct as testified to by K.G. To admit these instances of prior acts was highly prejudicial and the evidence lacked substantial probative value. The trial court erred when it found that the uncharged conduct was substantially similar to the conduct at issue in this case. In its analysis of *Le May* factors, it erroneously found physical restraint, conduct which escalated during the encounter, and shared characteristics of the victims as proof and or evidence of similarity. Simply put, this similarity does not exist based upon the testimony of the three sexual assault witnesses.

Other factors under *Le May,* such as closeness in time as well as the frequency of the prior acts do not provide the probative value required under the Rule 403 analysis. Appellant contends that it is the failure of the prior acts that

were admitted to be sufficiently similar to the charged act that creates the undue prejudice which required exclusion under Rule 403.

**B. THE DISTRICT COURT ERRED IN ALLOWING UNCHARGED CONDUCT OF ALLEGED THREATS AND WITNESS INTIMIDATION UNDER FEDERAL RULES OF EVIDENCE 404(b).**

Prior to trial, the appellant objected to the admission of evidence that the appellant intimidated or threatened witnesses. The appellant's position, at a hearing on July 12, 2023, was that evidence of witness intimidation is highly prejudicial and should be excluded. (see 3-ER-285-288; R.T., July 12, 2023 pp. 21-24). Here, in the case at bar, the district court reasoned that evidence that the appellant intimidated or threatened witnesses is admissible under 404(b) of the Federal Rules of Evidence. The district court held that the appellant's threats to both E.B. and S.F. was evidence of a common plan to intimate his victims as well as consciousness of guilt. See *United Statesv. Ho,* 651 F.Supp. 2d 1191, 1201 (D.Haw. 2009). In *Ho, supra,* however, a case cited by the trial court, the defendant engaged in witness tampering and the court concluded that defendant's conduct was relevant and admissible under Rule 403(b) to show consciousness of guilt. Here, on the other hand, the appellant's threatening statements did not constitute conduct that showed knowledge of guilt.

Uncharged conduct is generally not admissible to show that a defendant has the propensity to commit the charged crime. It is also not admissible to prove a person's character. The case law does support the introduction of such evidence to show motive, opportunity, intent, preparation, plan, knowledge, etc. see Federal Rules of Evidence 404(b).

The trial court's decision to allow the admission of intimidation evidence under Rule 404(b) to show consciousness of guilt as well as common plan was contrary to Rule 403, which required the exclusion of such prejudicial matter.

## C. THE DISTRICT COURT ERRED WHEN IT DISREGARDED DEFENSE COUNSEL'S OBJECTION TO THE PRESENTENCE INVESTIGATION'S CALCULATION OF APPELLANT'S CRIMINAL HISTORY AT CATEGORY IV

The district court adopted the calculations in the Presentence Investigation Report. See Transcripts of Judgement and Sentencing at p.3. The probation officer made the following Guidelines calculations:

| | |
|---|---|
| **Count One**: | |
| Base Offense Level: | 30 [§ 2A3.1(a)(2)] |
| Specific Offense Characteristics: | +4 [§ 2A3.1(b)(1)(use of force)] |
| | +2 [§ 3C1.1 (obstruction of justice) |
| Adjusted Offense Level | =36 |

**Count Two**:

| | |
|---|---|
| Base Offense Level: | 30 [§ 2A3.1(a)(2), §2A3.4] |
| | +2 [§ 3C1.1 (obstruction of justice) |
| Adjusted Offense Level = | 32 |

**Count Three**:

| | |
|---|---|
| Base Offense Level: | 30 [§ 2A3.1(a)(2)] |
| Specific Offense Characteristics: | +4 [§ 2A3.1(b)(1)(use of force)] |
| | +2 [§ 3C1.1 (obstruction of justice) |
| Adjusted Offense Level = | 36 |

**Multiple Count Adjustment (§3D1.4(a))**

| Group/Count | Adj Off Lev. | Units |
|---|---|---|
| Count One | 36 | 1.0 |
| Count Two | 32 | 1.0 |
| Count Three | 36 | 1.0 |
| Total Number of Unites | | 3.0 |
| Increase in Off Lev. (§3D1.4) | | +3 |
| Total Offense Level | | 39 |

The PSR assigned a total of nine (9) criminal history points, resulting in the assignment of Criminal History Category IV. PSR ¶¶ 96-107. Offense Level 39 at Criminal History Category IV yields an advisory sentencing range of 360 months to life. See U.S.S.G. Ch. 5, Part A, Sentencing Table.

During sentencing, the defense objected to the PSR's assignment of Criminal History Category IV, as it overrepresents defendant's criminal history. See Sentencing Memorandum, dkt no. 251, at 2. The sentencing court adopted the findings in the PSR, thereby implicitly overruling the defense objection without

any explanation or justification. However, six of the eight total convictions were for misdemeanor offenses. See PSR ¶¶ 96-103. Criminal History Category IV is normally reserved for the most violent and recidivist offenders.

Perhaps more importantly, the sentencing court plainly erred when it assigned one criminal history point each for three convictions sustained **after** the instant offense. See PSR at ¶¶ 101-103. The alleged victim made these accusations on April 16, 2020 to the National Park Service. She told investigators that the incidents took place in August of 2016, four years prior. From August 2016 to April 2020, Appellant had sustained (1) a Trespass conviction on 4/18/2017; (2) DUI conviction on 5/28/19; and (3) misdemeanor Criminal Threat on 8/29/22. PSR ¶¶ 101-103, respectively.

Moreover, an indictment was not obtained until August 2022 (see Indictment, dkt no. 1). Thus, six years had passed since the date of the alleged incidents. Therefore, the sentencing court erred when it assigned criminal history points to convictions sustained years after the incident. The Sentencing Guidelines make clear that, "Any prior sentence that was imposed within ten years of the defendant's **commencement of the instant offense** is counted." U.S.S.G. §4A1.2(e) (Applicable Time Period). Based upon the plain language in the Guidelines, those three convictions should not have accounted for three criminal

history points. Thus, the total criminal history points should have accumulated to 6, which results in Category III, with a sentencing range of 324-405 months, not 360-life.

## D. THE DISTRICT COURT ERRED IN APPLYING THE TWO-LEVEL OBSTRUCTION OF JUSTICE ADJUSTMENT

The PSR states:

> The defendant attempted to manufacture evidence to assist with his defense before trial by **discussing** a fabricated note that he hoped would show K.G.'s statements were unreliable. Additionally, after the defendant learned that K.G. alleged that he raped her, he sent her messages and posted on social media in an effort to dissuade her and other victims from participating in the investigation. Therefore, as the defendant willfully attempted to obstruct or impede, the administration of justice with respect to the investigation and prosecution of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction, a two-level increase applies. USSG §3C1.1.

PSR ¶¶ 49, 55, 61 (emphasis added).

First, even if taken as true, Appellant's *discussion* of the possibility of manufacturing a note from the alleged victim, does not amount to attempted obstruction. The Guidelines state that "producing or attempting to produce a false, altered or counterfeit document or record during an official investigation or judicial proceeding" is conduct warranting the two-level adjustment for obstruction. U.S.S.G. §3C1.1, cmt. 4(C).

Here, other than a *discussion* with another person, no steps were taken to attempt to manufacture evidence. Indeed, no "attempt" was made whatsoever. It was merely stated during a telephone conversation. Clearly, contemplation is not apropos to attempt. Defense counsel objected to the obstruction adjustment, stating that no evidence or "testimony at jury trial" was presented in support of the enhancement. Sentencing Memorandum, dkt no. 251, at 2. However, the district court adopted the PSR and applied the two-level adjustment to each count of conviction.

Moreover, the Sentencing Commission's intent is quite clear that some act by the defendant is required. In commentary note 4, the Guidelines only authorize applying this adjustment if there is some form of action on the part of the defendant. See §3C1.1 cmt n. 4(A)-(K)("Examples of Covered Conduct"). Nowhere in this provision is there authority to apply the adjustment for merely contemplating obstruction—at a minimum an attempt is needed to trigger the two-level increase.

The Supreme Court's recent decision in *Fischer* is instructive. The Court made clear that obstruction of justice under the statute (see 18 U.S.C. §1512) does not allow a "sweeping, all-purpose obstruction statute." *Fischer v. United States,* 144 S.Ct. 2176, 2194 (2024). The Court held:

> Our usual approach in obstruction cases has been to "resist reading" particular sub-provisions "to create a coverall" statute … If Congress had wanted to authorize such penalties for *any* conduct that delays or influences a proceeding in *any* way, it would have said so. Instead, Section 1512 mentions "record," "document," or other "object" 26 times. See 18 U.S.C. §§ 1512(a)(1)(B), (a)(2)(B)(i), (ii), (iii), 1512(b)(2)(A), (B), (C), 1512(c)(1), 1512(f).
>
> Rather than transforming this evidence-focused statute into a one-size-fits-all solution to obstruction of justice, we cabin our reading of subsection (c)(2) in light of the context of subsection (c)(1). Doing so affords proper respect to "the prerogatives of Congress" in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them.

*Fischer* at 2187.

Secondly, Appellant's threat to take legal action, i.e., sue the alleged victim for making false accusations, does not constitute willful attempt to obstruct justice, contrary to the district court's finding:

> The defendant willfully attempted to obstruct or impeded the administration of justice when the defendant admitted he sent messages through other people and posting on social media to intimidate K.G. after he learned that she was accusing him of rape. The defendant posted on Instagram and sent text messages to other people stating he was in the process of **suing** K.G. Victims and witnesses told agents they were concerned about the possibility of Barrett suing them and dissuading other victims from coming forward.

PSR ¶38 (emphasis added).

A person has the right to bring legal action against another if they believe they are

being wrongly accused of a crime. The Guidelines provide: "This provision is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1, cmt. 2 ("Limitations on Applicability of Adjustment)."

Further, the Sentencing Commission's intent in creating this guideline provision is clear when reviewing the examples of covered conduct: "threatening, intimidating, or otherwise unlawfully influencing" others. Id. at cmt. 4. Simply stated, Appellant's comments regarding suing the alleged victim does not equate to "threatening, intimidating, or otherwise unlawfully influencing" her or others.

### E. COUNT 2 SHOULD HAVE BEEN DISMISSED BY THE TRIAL COURT.

Rule 29, Federal Rules of Criminal Procedure allows the trial court to consider whether the evidence is insufficient to sustain a conviction even in the absence of a defense motion. (see 1-ER-027, ln. 16-17; R.T., Feb. 9, 2024 p. 30 ln. 16-17).

Count 2 of the Indictment charged the appellant with a violation of 18 U.S.C. § 2244(b), Abusive Sexual Conduct. Here, in the case at bar, at the river, and at the showers, R.G. testified that the appellant was drinking alcohol and was intoxicated. In fact, R.G. testified that the appellant was "passing out" and "mumbling" words as well as "slurring."

The trial court instructed the jury (No. 19) as to intoxication. Because the appellant was essentially drunk at the time of the river/shower incident. Count 2 should have been dismissed by the trial court for insufficiency of the evidence, i.e., lack of specific intent.

The jury instruction given to the jury by the trial court on intoxication was as follows:

> Evidence has been admitted that the defendant may have been intoxicated at the time that the crimes charged were committed. Intoxication can result from being under the influence of alcohol. You may consider evidence of the defendant's intoxication in deciding whether the government has proven beyond a reasonable doubt that the defendant acted with the required intent to commit the crime charged in Count 2.

Based upon R.G.'s testimony, appellant did not have the requisite specific intent to commit the criminal act charged in Count 2. Thus, the trial court's ruling on the Rule 29, was in error and the conviction on Court 2 should be reversed.

## VI.

## STANDARD OF REVIEW

The abuse of discretion standard is generally applied to the district court's decision to admit or exclude evidence.

Here, in the case at bar, the district court's error in admitting evidence requires reversal of appellant's conviction.

The standard of review in which the appellate court will defer least to the district court is *de novo* review. With *de novo* review, no form of appellate deference is acceptable. Salve *Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). *De novo* review is typically applied to pure questions of law.

In determining and calculating the appellant's guideline range pursuant to the Sentencing Guidelines, the district court simply misapplied the applicable scope and meaning of the law regarding sentencing issues. Thus, *de novo* review should be the standard to be applied in determining the proper sentence in the matter herein. Moreover, *de novo* review should apply to the trial court's failure to grant a motion to dismiss pursuant to Rule 29.

///

///

///

///

///

///

///

## VII.

## CONCLUSION

For the reasons set forth hereinabove, this Court should reverse the conviction of the appellant or in the alternative, remand for a further sentencing hearing.

Date: February 27, 2025

Respectfully Submitted,

MARKS & BROOKLIER, APC

/s Donald B. Marks
DONALD B. MARKS
Attorney for Appellant
CHARLES BARRETT

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Opening Brief is:

Proportionately spaced, has a typeface of 14 points or more, and contains 5051 words.

Date: February 27, 2025

/s Donald B. Marks
DONALD B. MARKS

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2025, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 27, 2025

/s Donald B. Marks
DONALD B. MARKS